JAMES LONG v. THE STATE.

1. L. being arraigned on the 8th day of April, 1871, on an indictment for assault with intent to murder, pleaded guilty. The indictment contained no averment of a previous conviction for a like offense, but the court below permitted the State to introduce in evidence before the jury the record of a previous conviction for murder in the second degree, had on the 4th day of April, 1871 ; and the court instructed the jury that on the evidence of the record of the former conviction of murder, the same being an offense of like nature, they should assess the defendant's punishment at seven years confinement in the penitentiary. *Held*, to be error. On the trial of an indictment, it is not competent, under Article 2463 of Paschal's Digest, to introduce evidence of a former conviction for a like offense, unless the previous conviction be charged in the indictment. (Mr. Justice Ogden dissenting.)

2. Article 2463 of Paschal's Digest can apply only to cases in which the accused was convicted of the former offense previous to the commission of the offense on which his trial is being had. (Mr. Justice Ogden dissents.)

3. Every circumstance constituting a statutory offense and affecting the degree of punishment must be alleged in the indictment.

4. Murder and an assault with intent to murder are not offenses of the " same nature " within the meaning of Article 2463, Paschal's Digest. Assault with intent to murder is a compound offense, consisting of two ingredients, first, the assault, and second, the intent to take life. Though the criminality of the intent gives peculiar aggravation to the offense, it is still an assault.

5. See the separate opinion of Mr. Justice Walker, for his reasons for concurring in the opinion of the court.

6. Mr. Justice Ogden dissents, on reasons stated in his opinion.

APPEAL from Cherokee.   Tried below before the Hon. M. Priest.

. The opinion of the court denotes such facts as are important.

*Guinn & Gregg* and *Bonner & Bonner*, for the appellant.

*Wm. Alexander, Attorney General*, for the State.

EVANS, P. J.   On the 8th April, A.D., 1871, the appellant, James Long, was put upon trial in the District Court of Cherokee  county on an indictment for an assault with intent to murder.

The indictment contains no averment of a previous conviction, nor that the offense was committed after the previous conviction.

At the trial, the appellant pleaded guilty, and the State introduced and read in evidence the record of a conviction for murder in the second degree, on the 4th day of April, 1871.

The record does not disclose on what day the indictment was found, or whether the offense of which he was convicted was committed before or after the date of the commission of the one for which he was put upon trial.   The court charged the jury, on the evidence of the record, of a former conviction of murder, the same being an offense of like nature, they must assess his punishment at seven years in the penitentiary.   The verdict of the jury was found in accordance with the charge of the court, and judgment was rendered thereon, condemning the prisoner to confinement in the penitentiary for seven years.

The language of the statute applicable to this case is as follows:—

"If it be shown on the trial of misdemeanor that the defend-"ant has been once before convicted of the same offense, he "shall, on a second conviction, receive double the punishment "prescribed for such offense in ordinary cases; and upon a "third or any subsequent conviction for the same offense, the "punishment shall be increased, so as not to exceed four times "the penalty in ordinary cases.

"If it be shown on the trial of a felony, less than capital, "that the defendant has been before convicted of the same "offense, or of one of the same nature, the punishment on such "second or other subsequent conviction, shall be the highest "which is affixed to the commission of such offense in ordinary "cases.

"Any person who shall have been three times convicted of a "felony, less than capital, shall on such third conviction be im-"prisoned to hard labor for life, in the penitentiary.

"A person convicted a second time of any offense to which "the penalty of death is affixed as an alternative punishment, "shall not receive on such second conviction a less punishment "than imprisonment for life in the penitentiary." (Paschal's Digest, Articles 2463, 2464, and 2465.)

In the construction of this statute, though it does not say in express terms that the subsequent offense shall be committed after the conviction of the former, yet, that such was the intention, the language clearly implies. And when we look outside, to the general policy of this legislation, all doubt is removed as to the true meaning of this act.

With the ameliorating change in the theory of the end of punishment, came the introduction of the penitentiary system, and with it, the policy of increasing the penalty for second and subsequent convictions, in order to the reformation of the offender.

In the fore-front of our Criminal Code it is declared, that

" the object of punishment is to suppress crime and reform the
" offender." (Paschal's Digest, Article 1604.)

All the States of the American Union, that have adopted
the penitentiary system, make provision for the reformation of
offenders, by increasing the punishment for second and subse-
quent convictions. Many of the Codes of the different States
declare in express terms, that before the party can be visited
with the increased penalty, it must appear that the subsequent
offense was committed after the conviction of the former offense.
Though differing in language, the same principle runs through
them all, and we are not permitted to suppose that our legisla-
ture intended to introduce a principle entirely out of harmony
with the general system, by visiting the increased punishment
upon an offender who has never had an opportunity of refor-
mation from experiencing the beneficent discipline of the law.

Bishop, in his Criminal Law, Section 147, Vol. I., says :—
" So it is a general proposition that whenever a statute makes
" the second offense a felony, the first being a misdemeanor, or
" punishes the second more heavily than the first, this must be
" enlarged to mean after a *conviction* for the first, and not mere-
" ly after it is committed."

This subject is reviewed with consummate ability by Mr.
Justice Daniels, in Rand v. The Commonwealth, 9 Grattan,
783, in which he cites the opinion of Chief Justice Savage in
The People v. Butler, 3 Cowen, 347. See also, Ross's Case, 2
Pick., 165 ; Plumley v. The Commonwealth, 2 Metc., 413 ;
Hawk. P. C., Ch. 40, Section 3 ; 1 Bishop, Crim. Law.

And not only must the second offense be committed after
the previous conviction, but the indictment must contain an
allegation to that effect. " It is a general rule, that all indict-
" ments upon statutes, especially the most penal, must state all
" the circumstances which constitute the definition of the
" offense in the act, so as to bring the defendant precisely with-
" in it." (Bishop's Criminal Practice, Vol. I., p. 362.)

" Again, it is a doctrine pervading the entire law of indict-
" ments, that whatever matter affects the degree or kind of pun-

"ishment, must be specially alleged." (Bishop, Vol. II., Section 567.)

As the punishment affixed by this statute for a second conviction is the highest for such offense in ordinary cases, as a matter of course a second conviction affects the degree of punishment, and must be alleged.

To withhold from the jury the discretion under the statute, of apportioning the penalty to the degree of guilt, it should be alleged and proved, that the second offense was repeated after conviction for the first.

A contrary construction would, in effect, do away with criminal pleadings, which the legislature has not the power to do. Since no man, under our Constitution, can be tried, convicted, and be deprived of liberty or life, without first having been charged by indictment, setting forth the offense in plain and intelligible words. Such a construction would, in the language of Mr. Bishop, " cut away so much of the pillars of our liberty, " which consists in the right of every man to have presented to " him an accusation before he is called upon for a defense."

Every circumstance constituting a statutory offense which would affect the degree of punishment, must be alleged in the indictment.

We are of the opinion also, that an assault with the intent to commit murder is not the same offense nor of the same nature as murder. The Criminal Code, in its classification of offenses, distributes them into misdemeanors, felonies less than capital, and capital offenses.

An assault with intent to commit murder, is a compound offense, consisting of two ingredients ; first, the assault, and second, the intent to take life. The criminality of the intent gives peculiar aggravation to the assault, but still it is an assault, while murder is a capital offense.

The judgment is reversed and the cause remanded.

Ogden, J. Article 2463, Paschal's Digest, reads, in part, as follows : " If it be *shown, on the trial* of a felony less than capi-

" tal, that the defendant has been convicted of the same offense, " or of one of the same nature, the punishment on such second " or other subsequent conviction, shall be the highest which is " affixed to the commission of such offense in ordinary cases." And Article 2491 declares that " The provisions of this Code " shall be liberally construed, so as to attain the object intended " by the Legislature—the prevention, suppression, and punish- " ment of crime." And Article 1611 further declares, " that " this Code, and every other law upon the subject of crime, " which may be enacted, shall be construed according to the " plain import of the language in which it is written, without " regard to the distinction usually made between the construc- " tion of penal laws and laws upon other subjects."  .

Believing that it is the duty of this court to decide cases according to the plain import of the laws of THIS State, and not according to the laws of any other State, or the decisions of any court upon laws foreign to this State, which are at variance or in conflict with our own laws, I am unwilling to concur in the decision of the court in this case.

WALKER, J.  I regret that the opinion of the majority of the court should have been so misunderstood in the dissenting opinion delivered in this case, as to render it necessary that I should place my individual opinion (though concurring in that of the Chief Justice) upon the record.  We have differed in our construction of Article 2463 of Paschal's Digest, and also of Article 2491, both of which are copied in the dissenting opinion of my brother Ogden.  A part of Article 2491 reads thus: " The provisions of this Code shall be liberally construed, so as " to attain the object intended by the Legislature,"  *  *.

Let us, then, apply this principle of *liberal construction*, called for in 2491, to 2463.  In the latter Article the Legisla- ture, as I think, intended to lay down a principle common to the Statute Law of England, as well as that of the United States, and it is this: Predicated, in part at least, upon the idea

that one of the main objects of punishment is the reformation of the offender, punishment, then, for the first offense being light in proportion to that inflicted for a second and third offense, the punishment is increased when the offender, failing to reform under a first punishment, goes on repeating his offenses. But will it be supposed that the Legislature intended to increase the punishment upon one who has committed a second or a third offense, but has not yet been tried or punished for the first or second? If so, then is the object of punishment, so far as relates to reformation, lost sight of entirely.

I do not deny but that under our law the cumulative penalty may be enforced against one who has not yet suffered the penalty of his first offense. It is not herein that our difficulty lies. The language of the Statute is this: "If it be shown on the "trial of a misdemeanor," * * "If it be shown on the trial of a "felony," * *. How shown? This is a very material matter to the prisoner, as, if it be legally shown, it will go to augment his punishment. Must it, then, be shown as any other material fact? Should it be alleged in the indictment?

In some of the States it is held (as, for instance, in the State of New York) that the indictment must especially aver not only the former conviction, but it must be averred that the conviction was had in a court of competent jurisdiction. Mr. Bishop, in his work on Criminal Law, Vol. I., Paragraph 573, speaking of the statutes of different States on this subject, says: "In Connecticut it has been held not to be necessary to allege, "in an information for first offense, that the offense is the first, "because this will be presumed in the absence of any allegation "of a different import. (Kilbourn v. The State, 9th Conn., 560.) "But always, of course, if there is to be a heavier sentence "inflicted upon a prisoner, in consequence of his offense being "a second or third one, the indictment must contain the appro- "priate allegation, because it is an invariable principle in the "criminal law that every indict mentmust allege every fact "which is essential to the punishment which the court is to be "called on to inflict." A number of the most respectable

authorities are referred to in the text; and to the mind of every lawyer the doctrine must come with great force, founded, as it is, upon the principle of common justice.

The prisoner is not tried over again for his first offense, but he has a right to know that the question of his having committed a first offense is to be presented to the jury, and if it be shown that he did commit a former offense, that his punishment will be increased thereby, so that he may rebut this fact in any manner the law points out to him. The question of identity certainly may be raised, and he has a right to show that he is not the person named in the former record. He might also show that the court had no jurisdiction to try the case, or that the judgment of conviction had been set aside, a new trial granted him, and that he had been acquitted. How is he to make any of these defenses unless notified by the indictment of the intention of the State to hold him as guilty of a second or third offense? Lord Campbell, C. J., in an English case observed : " A statement of a previous conviction does not " charge an offense. It is only the averment of a fact which may " affect the punishment. The jury do not find the person guilty " of the previous offense; they only find that he was previously " convicted of it, as a historical fact." (Regina v. Clark, Dears, 198, and 201.)

Apply this principle to the case at bar. The indictment contains no reference to a former conviction. The prisoner is not put upon his guard, nor enabled to make any defense against this charge of a former conviction; that is thrown in as a makeweight on the trial, and when the State had closed its other evidence, and he is forced to submit without the power of resistance.

My understanding of the statute is simply this, that the Legislature intended that this fact, like any other material fact shown against the prisoner, should be shown in strict accordance with the rules and principles of law; and I believe there is no other way in which this can be done, than by giving the defendant

timely notice in the indictment that the fact will be shown against him on the trial.

I agree with my brother Ogden, " that it is the duty of this " court to decide cases according to the plain import of the laws " of *this State*, and not according to the laws of any other State, " or the decisions of any court upon laws foreign to this State, " which are at variance or at conflict with our own laws." But I believe, when the laws of Texas are to be interpreted by the incontrovertibly plain rules of common law and common sense, that they should have that interpretation and none other.

It must not be claimed that the Criminal Code of Texas is, as Paul said of the law of the heathen,—" a law unto itself;" for we are every day endeavoring, by the best lights we have, to apply to this code such principles of interpretation as its ambiguities or imperfections may make necessary. I think it was the bounden duty of this court to reverse the judgment in this case, and to remand the cause.

Reversed and remanded.