**AFFIRMED and Opinion Filed March 20, 2019**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00001-CR

**ADRIAN URIBE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F-1770392-J**

## MEMORANDUM OPINION
Before Justices Whitehill, Molberg, and Reichek
Opinion by Justice Reichek

Adrian Uribe appeals his conviction for assault involving family violence. In his first two issues, appellant contends the trial court erred in permitting the state to amend the indictment over his objection. In his third issue, appellant argues the trial court's actions in this case demonstrated bias requiring reversal. We affirm the trial court's judgment.

### I. Amendment of Indictment

Appellant was indicted for the offense of assault of a family or household member committed on or about February 7, 2017. The offense was enhanced to a felony by a previous conviction for an assaultive offense against a family or household member. The indictment returned by the grand jury listed appellant's previous conviction as being for the offense of terroristic threat committed on or about October 22, 2015. Six months after the indictment was

returned, the State moved to amend the indictment to delete the reference to the terroristic threat conviction and replace it with seven different previous convictions for family violence offenses. The request to amend was granted and appellant moved to quash the new indictment contending it failed to give him adequate notice of the charge or charges against him. Appellant argued that, by alleging seven different previous convictions – any one of which could be used to fulfill the required element of a prior conviction – the State was impermissibly alleging an essential element of the offense in the disjunctive which prevented him from being able to adequately prepare a defense.

In response, the State immediately moved to amend the indictment again. This time, the State requested that six of the seven previous convictions listed in the indictment be deleted, leaving a single previous conviction for assault family violence committed on or about December 14, 2013. Appellant then filed a second motion to quash arguing the State's use of a different previous conviction than the one used in the original indictment deprived him of his right to have the grand jury screen the charges against him. After a hearing on the motions, the trial court denied the motion to quash and the case proceeded to trial on the second amended indictment.

In his first two issues on appeal, appellant contends the trial court erred in denying his motion to quash because the State's amendment of the indictment to allege a different previous conviction deprived him of his constitutional right to a grand jury screening of the charges. In 1985, both the Texas Constitution and the Texas Code of Criminal Procedure were amended to permit the State to amend indictments to correct substantive defects. *See Martin v. State*, 346 S.W.3d 229, 232 (Tex. App.—Houston [14th Dist.] 2011, no pet.). After these changes in the law, Texas courts have held that, so long as the indictment allows the court and the defendant to identify the penal code provision the defendant is charged with violating, and that provision vests jurisdiction in the trial court, the indictment is sufficient to invoke the court's jurisdiction even if

it fails to allege an element of the offense or contains additional information indicating the defendant is innocent. *Id.*; *see also Duron v. State*, 956 S.W.2d 547, 554 (Tex. Crim. App. 1997); *Flowers v. State*, 815 S.W.2d 724, 728 (Tex. Crim. App. 1991). Once jurisdiction is vested, the indictment may be amended at any time before the date the trial on the merits commences. TEX. CODE CRIM. PROC. ANN. art. 28.10(a). The indictment may not be amended over the defendant's objection, however, if the amendment results in charging the defendant with an additional or different offense or if the defendant's substantial rights are prejudiced. *Id.* art. 28.10(c).

In this case, appellant does not contend the amended indictment charged him with a different or additional offense than set forth in the original indictment. Both indictments charged him with the offense of assault of a family or household member committed on or about February 7, 2017, enhanced to a felony by a previous conviction. Appellant contends only that his substantial rights were prejudiced because the grand jury did not "pass on" the previous conviction used to enhance his offense to a felony.

A defendant has a constitutional right to have a grand jury pass upon the question of whether there is probable cause to believe he committed a particular offense. *Duron*, 956 S.W.2d at 550. The purpose of the grand jury is to protect citizens from the State's commencement of arbitrary or unreasonable felony prosecutions. *Batiste v. State*, 785 S.W.2d 432, 436 (Tex. App.— Corpus Christi–Edinburg 1990, pet. ref'd). The grand jury does not, however, necessarily need to pass on matters that are purely evidentiary. *See Flowers*, 815 S.W.2d at 729. An amendment that changes the evidence needed to prove the offense, so long as it is made on the basis of the same incident upon which the original indictment was based, does not affect a defendant's substantial rights or deny him grand jury review in most cases. *Id.*

Here, the incident made the basis of the original indictment was appellant's alleged assault of A.C.M. on February 7, 2017 "by pulling and by grabbing and by scratching complainant with a

hand and hands." Nothing in the State's amendment of the indictment altered this allegation. Appellant argues that by amending the previous conviction allegation, the amended indictment alleged an entirely new incident requiring grand jury review. But the State was required to prove only appellant's *status* as a person with a previous conviction for assault against a family or household member. *See Cervantes v. State*, No. 05-01-00346-CR, 2002 WL 1163913, at *2 (Tex. App.—Dallas June 4, 2002, pet ref'd). There was no requirement that the State prove a specific previous conviction to fulfill its evidentiary burden. Where an amendment simply alters an allegation in a fact situation where the State had several choices of which fact to allege, there is no prejudice to a defendant's substantial rights. *See Flowers*, 815 S.W.2d at 729. The grand jury passed on appellant's status as a person with a previous family violence conviction which raised the charged offense to the level of a felony. Accordingly, appellant received all the grand jury screening to which he was entitled.

Appellant argues the amendment in this case was prejudicial because it allowed the State to use the more "ominous and foreboding" sounding conviction for terroristic threat to obtain the indictment without having to prove that conviction at trial. Appellant suggests the grand jury might not have passed upon his having a previous family violence conviction if the State had used the assault conviction it proved at trial instead. Appellant does not dispute the existence of any of his previous family violence convictions or that each one was independently sufficient to raise his current offense to the level of a felony. His argument that the grand jury might have refused to find probable cause of his status as a person with a previous conviction if they were presented with evidence of a less "ominous" sounding prior offense is pure speculation and not sufficient to show actual prejudice. *Cf. Ramer v. State*, 714 S.W.2d 44, 47 (Tex. App.—Dallas 1986, pet. ref'd) (argument that jury would have been more sympathetic to alibi defense than judge was speculation insufficient to show affirmative prejudice).

Appellant also argues that the fact the State abandoned the terroristic threat conviction in favor of a different previous family violence conviction shows there was something "bad" about the terroristic threat conviction. Appellant does not, however, identify any issues or problems with the conviction. In seeming contradiction, appellant next argues the State chose to use the terroristic threat conviction to secure the indictment because it was easier to prove than the family violence conviction used at trial. Yet the State successfully proved the family violence conviction listed in the amended indictment at trial under a higher burden of proof than required for obtaining an indictment. *See Duron*, 956 S.W.2d at 550. Appellant does not challenge the sufficiency of the evidence supporting the jury's affirmative finding of a previous conviction and there is nothing to suggest this same evidence would not have been sufficient in the eyes of the grand jury, particularly when it only needed to find probable cause. *Id.*

Based on the foregoing, we conclude the trial court did not err in denying appellant's motion to quash. We resolve his first two points against him.

## II. Judicial Bias

In his third issue, appellant contends the trial judge committed reversible error because she acted as an adversarial advocate against him and violated his right to a neutral arbiter. Due process requires a neutral and detached judge. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). A defendant is entitled to a fair trial before a judge with no actual bias against him or interest in the outcome of his particular case. *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997). Accordingly, a judge should not act as an advocate or adversary for any party. *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). To reverse a judgment on the ground of improper conduct or comments of the judge, we must find (1) that judicial impropriety was in fact committed, and (2) probable prejudice to the complaining party. *Id.* Judicial remarks during the course of a trial that are critical, disapproving, or even hostile to

counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. *Id.* Such remarks may constitute bias if they reveal an opinion deriving from an extrajudicial source. *Id.* When no extrajudicial source is alleged, however, such remarks will constitute bias only if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. *Id.* Normal expressions of impatience, dissatisfaction, annoyance, and even anger do not establish bias or partiality. *Liteky v. U.S.*, 510 U.S. 540, 555–56 (1994). "A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune." *Id.*

In this case, appellant points to three incidents at trial that he says indicate the trial judge's bias against him. First, appellant contends the trial judge improperly instructed the jurors on the State's burden of proof in a manner that was detrimental to him. Specifically, appellant complains about the following comments by the judge during voir dire:

> Now, the last thing I'm gonna – another thing is that we all like those TV shows, Law and Order and CSI and all those things, and they're great, they're fun, they're entertaining, but they're not reality. So you can't hold the State of Texas to the level of CSI. You can't hold the defense to the level of Law and Order. Even if it's a case that you just saw the other day and it's exactly the same case, the reality is there are so many things they do on TV that really we can't do. The State of Texas cannot get a fingerprint off of someone's eyeball. It can't happen. So those type of things, they make for good TV but they're not necessarily true and we don't want you to hold the State to that standard.

The judge later stated ". . . the State has to prove the case to you and they have to prove it any way they can. And we're not asking you not to use your common sense. We want you to use your common sense." Relying on *Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000), appellant argues the Texas Court of Criminal Appeals "made clear that trial courts should not provide jurors with any definition whatsoever of reasonable doubt and, moreover, should not instruct jurors that reasonable doubt was a doubt based on reason and common sense." Appellant suggests that jurors should be free to find reasonable doubt if they feel the State failed to present proof rising to the

level depicted on the CSI television show if that is what reasonable doubt means to them. Appellant misreads *Paulson* and his argument is without merit.

In *Paulson*, the court of criminal appeals addressed a jury charge which provided three different definitions of reasonable doubt, including one that stated reasonable doubt is based on reason and common sense. *See id*. at 572. After discussing the problems and constitutional implications of reasonable doubt definitions generally, the court overruled the portion of its previous opinion in *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991) which held that the trial court was *required* to give the jury a full, definitional instruction on reasonable doubt. *Paulson*, 28 S.W.3d at 573. The court concluded "the better practice is to give no definition of reasonable doubt at all to the jury." *Id*. Since *Paulson*, the court has made clear that, although the better practice is to not give a definition, the trial court is not prohibited from doing so. *See Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010).

When read in context, it is clear that the trial judge in this case did not give the jurors a definition of reasonable doubt and nothing in her discussion of the State's burden or the reasonable doubt standard was advantageous to the State or detrimental to appellant. Indeed, the judge went to great lengths to ensure that the jurors understood the heavy burden of proof placed on the State. Shortly before the judge made the comments about which appellant complains, she stated:

> Now the State of Texas has the burden of proof in this case throughout this trial. It rests solely upon the State of Texas. Never at any time does it shift to the accused. The State of Texas must prove each and every element of the offense beyond a reasonable doubt. . . . Now, there is no definition for the term 'beyond a reasonable doubt.' You have to determine for yourself what that term means to you. It is the level of confidence that you need in order to find the defendant guilty. You have to make a decision whether the State convinced you beyond a reasonable doubt. Does everyone understand that? And that is your personal decision. Now, with that in mind, the defendant is presumed to be innocent until guilt is established by legal evidence received before you in the trial of this case beyond a reasonable doubt.

Following these comments, the judge's discussion of television programs was not directed at the State's burden so much as warning jurors not to confuse fictional evidence portrayed in televised entertainment programs with the reality of the evidence presented to them. Urging the jury to use common sense was, at worst, unhelpful; but it was in no way detrimental to appellant. *See Paulson*, 28 S.W.3d at 572. We see nothing improper in the judge's comments.

Appellant next complains that the trial judge sua sponte advised the State how to better present its case. During the State's direct examination of the complainant through an interpreter, the prosecutor posed questions about the specifics of a protective order rendered against appellant. After several questions about when the order would expire, the complainant said, "Lately they gave me one – no, I don't remember." The judge then stated it was time for a break and the jury left the courtroom. During the break, the judge asked the prosecutor if she had a copy of the protective order. When she said she did, the judge stated, "Well, then, why not just take it up there and ask if she recognizes it, if she remembers it. You need to woodshed your witness, because this is the last time we [are] stopping for this, okay? This story isn't even making sense to me, so I know it's not making sense to them." Appellant argues this comment was made with the intent of helping the State present its case in a more comprehensible manner and constitutes an obvious example of acting as an adversarial advocate.

A trial judge has broad discretion in maintaining control of the courtroom and expediting a trial. *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). A judge can lawfully provide guidance and manage presentation of evidence from the bench without abandoning his role as an independent arbiter. *Strong v. State*, 138 S.W.3d 546, 552 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.). In this case, the trial court expressed frustration with the manner in which the State was attempting to present its evidence because it was causing delays. Her suggestion to the prosecutor of a means to expedite testimony was well within the bounds of her discretion to

maintain control over the trial and her comments did not display any unfairness to the defendant. *See Rubio v. State*, No. 04-13-00436-CR, 2014 WL 1319336, at *2 (Tex. App.—San Antonio April 2, 2014, no pet.) (holding trial court properly exercised discretion in suggesting objection and reminding prosecutor to offer exhibit into evidence). In addition, appellant fails to show how he was prejudiced by this comment, made outside the presence of the jury, regarding the presentation of a single piece of evidence.

Finally, appellant contends the trial judge improperly interrupted his defense despite the fact that the State had made no objection. During defense counsel's questioning of the complainant about the incident made the basis of the indictment, counsel attempted to impeach her with a prior inconsistent statement. The following exchange occurred:

> Defense Counsel: And at this time we're gonna play one of the body cams that has this statement on it?
>
> The Court: I'm sorry?
>
> Defense Counsel: At this time we are gonna play a body cam from one of the officers who . . .
>
> The Court: Have you proved up this body cam? Have you proved up anything – have you provided any type of foundation for this body cam?

The conversation between the trial judge and defense counsel continued, resulting in defense counsel showing the complainant the video outside the presence of the jury to refresh her recollection. Once her recollection was refreshed, the complainant testified the video accurately represented what happened on the day of the offense and it was admitted into evidence over the State's hearsay and improper translation objections.

As with appellant's prior complaint, the trial court does not demonstrate bias by managing presentation of the evidence. *See id*. The judge ultimately admitted the video evidence over the State's objections, thereby negating any harm to appellant. Although appellant characterizes the judge's comments as "aggressive," critical comments do not generally demonstrate bias.

–9–

*Dockstader*, 233 S.W.3d at 108.  Nothing in the judge's comments demonstrated a high degree of favoritism or antagonism or rose to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury.  *See Jasper*, 61 S.W.3d at 421.  We resolve appellant's third issue against him.

We affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
180001F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

ADRIAN URIBE, Appellant

No. 05-18-00001-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3, Dallas County, Texas
Trial Court Cause No. F-1770392-J.
Opinion delivered by Justice Reichek. Justices Whitehill and Molberg participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered March 20, 2019